IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VICTORIA SAWYER AND JOSEPH ROBERTS,** individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**SIRIUS XM RADIO, INC.,** a Delaware corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs Victoria Sawyer and Joseph Roberts bring this Class Action Complaint and Demand for Jury Trial against Defendant Sirius XM Radio, Inc. ("Defendant" or "Sirius") to stop Defendant's practice of violating the Telephone Consumer Protection Act by placing unsolicited, autodialed telemarketing calls to consumers, including to consumers who specifically ask that the calls stop, and to otherwise obtain injunctive and monetary relief for all persons injured by the conduct of the Defendants. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Victoria Sawyer is a resident of Siler City, Chatham County, North Carolina.

2. Plaintiff Joseph Roberts is a resident of Cumming, Forsyth County, Georgia.

3. Defendant Sirius is a Delaware corporation with its principal place of business located at 1221 Avenue of the Americas, 35th Floor, New York, New York, 10020. Defendant Sirius conducts business throughout this District and throughout the United States.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant resides in this District and the wrongful conduct giving rise to this case emanated from this District.

## INTRODUCTION

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11. According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

12. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

15. Sirius is a well-known broadcasting company that provides satellite and online radio services to subscribers.

16. As part of its business practice, Sirius (either directly or via its telemarketers acting on its behalf and for its benefit) places solicitation telemarketing calls to consumers in order to solicit them to purchase a Sirius subscription.

17. Unfortunately, these telemarketing calls are placed to the cellular telephones of consumers their express written consent and continue after consumers ask that the calls stop.

18. In response to these telemarketing calls to cellular telephones without sufficient consent, Plaintiffs file this lawsuit seeking monetary and injunctive relief requiring the

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

3

Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF SAWYER'S ALLEGATIONS

19. Plaintiff Sawyer is the owner and customary user of a cellular telephone number ending in 4557. Sawyer's number has been on the National Do Not Call Registry since 2006.

20. Plaintiff Sawyer's cellphone number is not associated with a business and is used for personal use only.

21. On November 20, 2020, Sawyer received a call on her cellphone from the phone number 866-409-3096. As Sawyer was at work, she rejected the call.

22. On November 24, 2020, Sawyer received another call on her cellphone from the phone number 866-409-3096. Sawyer again rejected this call as she was at work.

23. When Sawyer got off of work on November 24, 2020, she called the 866-409-3096 number back to investigate who called her.

24. When Sawyer dialed the number back, she heard an automated message stating that it was Sirius. The recording gave various options to choose from by pressing certain numbers. One of the choices was to "press 3" to be removed from Sirius' calling list. Sawyer pressed 3.

25. Upon pressing 3, Sawyer was transferred to a live operator. Sawyer told the operator that she wanted to be removed from Sirius' calling list. In response, the operator proceeded to try to sell Sawyer Sirius' services. Sawyer reiterated that she was not interested and that she wanted Sirius to stop calling her.

26. On November 30, 2020 and December 4, 2020—and despite her clear instructions on November 24, 2020 that she did not want Sirius to call her again—Sawyer received additional calls from 866-409-3096.

27. On December 11, 2020 Sawyer received yet another call from 866-409-3096. Sawyer answered this call and heard a click upon answer. Sawyer also needed to say "Hello"

4

multiple times before a person answered her. This is indicative of the use of an automatic telephone dialing system.

28. When the operator finally joined the call, the operator stated that he was from Sirius. Sawyer told the operator that she asked on November 24, 2020 not to be called again by Sirius. The operator apologized, but then proceeded to solicit Sawyer to purchase Sirius' products and services. Frustrated, Sawyer hung up.

29. Sawyer subsequently received solicitations from Sirius in the mail.

30. Sawyer has never provided Defendant with consent to call her cellphone.

31. In addition, Defendant failed to stop calling Sawyer after multiple stop calling requests.

32. The unauthorized telemarketing calls that Sawyer received from Sirius, as alleged herein, have harmed Sawyer in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

33. Seeking redress for these injuries, Plaintiff Sawyer, on behalf of herself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed telemarketing calls to cellular telephones without prior express consent and otherwise prohibits companies from placing any telemarketing calls if they fail to implement adequate policies and procedures for maintaining an internal do not call list.

## PLAINTIFF ROBERT'S ALLEGATIONS

34. Plaintiff Roberts is the owner and customary user of a personal cellular telephone number ending in 0374.

35. On November 19, 2020, Roberts received a call from the number 678-609-5251.

36. When Roberts answered the call, he heard a click and had to say "hello" multiple times before an operator joined the call. This is indicative of ATDS usage.

37. The operator solicited Roberts for a Sirius subscription.

38. After the call, Roberts received a follow-up email from Sirius.

39. Roberts has never provided Defendant with consent to call his cellphone.

40. The unauthorized telemarketing calls that Roberts received from Sirius, as alleged herein, have harmed Roberts in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

41. Seeking redress for these injuries, Plaintiff Roberts, on behalf of himself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed telemarketing calls to cellular telephones without prior express consent.

## CLASS ALLEGATIONS

42. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **No Consent Class**: All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the class members; (2) Defendant, or a third person acting on behalf of Defendant, called; (3) on the person's cellular telephone; (4) for the same purpose for which Plaintiffs were called; (5) using the same equipment used to call Plaintiffs; and (6) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call Plaintiff.
> .
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or a telemarketing acting on behalf of Defendant) called more than one time (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff.
>
> **DNC Registry Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant, or a third person acting on behalf of Defendant, called more than one time on his/her telephone; (2) within any 12-month period; (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call Sawyer, or for whom it did not

6

obtain prior express written consent.

43. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the Class definitions following appropriate discovery.

44. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant systematically placed telemarketing calls to Plaintiffs and other consumers without first obtaining prior express written consent to make the calls;

(b) whether Defendant's calls to Plaintiffs and other consumers were sent for telemarketing purposes;

(c) whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether Defendant's conduct constitutes a violation of the TCPA;

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

(f)     whether Defendant's calls were placed using an ATDS.

46.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Classes.

47.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the No Consent Class)**

48.     Plaintiffs repeat and reallege paragraphs 1 through 46 of this Complaint and incorporates them.

49. Defendant or its telemarketers made unsolicited and unwanted telemarketing calls to cellular telephone numbers belonging to Plaintiff and the other members of the No Consent Class, without their prior express written consent in an effort to generate leads for Defendant's products and services.

50. Defendant and its telemarketers failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a clear and conspicuous disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

51. Further, Defendant or its telemarketers placed the telephone calls using an ATDS, that is, equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, *en masse*, simultaneously and without human intervention.

52. By making unsolicited telephone calls to Plaintiffs and members of the No Consent Class's cellular telephones without prior express consent, and by utilizing an ATDS and/or pre-recorded or artificial voice, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

53. To the extent third parties placed the calls, Defendant knowingly received the benefits of such calls and ratified the calls.

54. As a result of Defendant's unlawful conduct, or the conduct of Defendant's telemarketers on Defendant's behalf and/or for its benefit, Plaintiffs and the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited

9

telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

55. In the even it is determined that Defendant's conduct was willful and knowing, the Court should, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Internal Do Not Call Class)**

56. Plaintiffs repeats and realleges the foregoing allegations of this Complaint and incorporates them by reference.

57. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on

whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

58. Defendant or their telemarketers placed marketing calls to Plaintiffs and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/texts.

59. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

60. Defendant has violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## THIRD CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Sawyer and the Do Not Call Registry Class)

61. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

62. 47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

63. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." See 47 C.F.R. § 64.1200(c).

64. 47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

65. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate

any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

66. Defendant and/or its telemarketers made more than one unsolicited telemarketing call to Sawyer the other members of the DNC Registry Class within a 12-month period without having prior written express consent to place such calls.

67. Each such call was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

68. Sawyer and the other members of the DNC Registry Class did not provide consent to receive such telemarketing calls from Defendant or its telemarketers.

69. Neither Defendant nor its telemarketers have any record of consent to place such telemarketing calls to Plaintiffs or the other members of the DNC Registry Class.

70. Defendant violated 47 C.F.R. §§ 64.1200(d) and (e) by causing calls to be initiated for telemarketing purposes to wireless telephone subscribers, such as Plaintiffs and the members of the DNC Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a do not call policy and a list of persons who request not to receive telemarketing calls.

71. Defendant violated 47 U.S.C. § 227(c)(5) with respect to Sawyer and the members of the DNC Registry Class because Sawyer and the members of the DNC Registry Class received more than one telephone call in a 12-month period made by or on behalf of Sirius in violation of 47 C.F.R. § 64.1200, as described above.

72. Additionally, on information and belief Sirius fails to have a written do not call policy that is available on request. On further information and belief, Sirius fails to train its employees and personnel involved in telemarketing in the existence and use of its do not call policy or do not call list.

73. As a result of Sirius's conduct as alleged herein, Sawyer and the members of the

DNC Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled to, inter alia, receive at least $500 in damages for each such violation of 47 C.F.R. § 64.1200.

74. To the extent Defendant's misconduct is determined to have been willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Sawyer and the members of the DNC Registry Class.

**WHEREFORE**, Plaintiffs Sawyer and Roberts, individually and on behalf of the Classes, prays for the following relief:

75. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiffs as the representatives of the Classes; and appointing their attorneys as Class Counsel;

76. An award of actual and/or statutory damages and costs;

77. An order declaring that Defendant's actions, as set out above, violate the TCPA;

78. An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Classes; and

79. Such further and other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs requests a jury trial.

Respectfully Submitted,

**VICTORIA SAWYER AND JOSEPH ROBERTS**, individually and on behalf of those similarly situated individuals

Dated: January 8, 2021            By:      /s/ Jeffrey S. Arons

Jeffrey S. Arons
ja@aronslaw.net
Arons & Arons, LLC
76 South Orange Ave., Suite 100

South Orange, New Jersey 07079
Telephone: (973) 762-0795
Facsimile: (973) 762-0279

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E Mexico Avenue, Suite 300
Denver, CO 80210
Tel: 720.213.0675
Fax: 303.927.0809


*Pro hac vice application to be filed